# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLOVER MARSH,
      Plaintiff,

      v.

TOWN OF EAST HARTFORD, PETER
VANEK, SCOTT SANSOM, and MARK J.
SIROIS,
      Defendants.

No. 3:16-cv-928 (SRU)

## ORDER

This case arises out of an arrest that occurred at the scene of an accident in East Hartford, Connecticut.  The plaintiff alleges that she was improperly placed under arrest for taking photographs of the accident scene and that she was subject to the use of excessive force during the course of that arrest.  The defendants moved for summary judgment on all of plaintiff's claims except the claims of excessive force, assault, and battery.

## I.      Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.    Background

On June 21, 2013, the plaintiff, Clover Marsh, was driving along Main Street in East Hartford, Connecticut (the "Town"), when she observed a motor vehicle accident. She immediately pulled her car over to the side of the street and began to render assistance at the accident scene. When emergency vehicles arrived, she and the other bystanders relocated to a grassy area from which they could observe the scene. There came a point in time when Marsh decided to leave her position at the grassy area. Marsh stated that she left both because she was going back to her car to leave the area and because she wanted to get a couple photos from an area in which she could better observe the scene. Marsh positioned herself immediately behind two fire trucks so that she could observe the accident scene by looking between them. At that point, Sergeant Peter Vanek, who had arrived at the scene and was performing his duties of securing the scene and managing the other officers, approached Marsh and instructed her to move from her position adjacent to the fire trucks. Marsh refused Vanek's commands that she leave the area. Instead, she persisted in trying to take photos and/or videos and attempted to explain why she was justified in staying in that location. Part of her justification was that the relevant "emergency" had ended because the accident victim had already been removed from the car and placed into the ambulance. Accordingly, in her eyes, the emergency situation had dissipated.

During Vanek's interaction with Marsh, Vanek observed a firefighter who had been distracted by Marsh's refusal to comply with Vanek's orders. The firefighter, Robert Bidwell, also testified that he had been distracted by Marsh's conduct. At some point during the encounter with Vanek, Marsh held up her phone and told Vanek that she was recording him. Shortly after, Vanek placed Marsh under arrest for interfering with the police, in violation of Conn. Gen. Stat. § 53a-167a.

As Vanek was placing Marsh into a police vehicle, Vanek handled her in a way that caused her to strike her head on the vehicle. Marsh stated that the impact caused everything to "go black" and caused her ears to ring. Eventually, she was taken to the hospital. Upon being released, she suffered from dizziness and needed assistance in order to be taken to her home. In the days following the event, she continued to suffer headaches and, after going to her own doctor, was diagnosed with a concussion.

On May 31, 2016, Marsh filed this action in Connecticut Superior Court, Judicial District of Hartford. The action was removed on June 14, 2016, and an amended complaint was filed on November 16, 2016. The amended complaint alleges eleven causes of action. Count One alleges an excessive force claim against Vanek. Counts Two through Four allege false arrest, malicious prosecution, and retaliatory arrest claims against Vanek. Count Five alleges a claim for respondeat superior/municipal liability against the Town; the Chief of Police, Scott Sansom; and the former Chief of Police, Mark Sirois. Counts Six and Seven allege assault and battery claims against Vanek. Counts Eight and Nine allege recklessness and gross negligence claims against Vanek. Count Ten alleges an intentional infliction of emotional distress ("IIED") claim against Vanek. And Count Eleven alleges a claim for indemnification by the Town for any damages caused by Vanek or other defendants. No motion to dismiss was filed, and on April 10,

4

2017, the defendants moved for summary judgment on all of her claims except the claims of

excessive force, assault, and battery.

## III.    Discussion

The majority of Marsh's claims rely on her claim that she was arrested without probable

cause.  Accordingly, I will first consider whether there was probable cause to arrest her.  After

that, I will consider any remaining claims not resolved by that determination.

### A.  Probable Cause

The probable cause standard is the same under both Connecticut and federal law.

*Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007).  An officer has probable cause to arrest an

individual when the officer has "knowledge of, or reasonably trustworthy information as to, facts

and circumstances that are sufficient to warrant a person of reasonable caution in the belief that

an offense has been or is being committed by the person to be arrested."  *Zellner v. Summerlin*,

494 F.3d 344, 368 (2d Cir. 2007).  In evaluating whether probable cause exists, the court must

look at the "totality of the circumstances," *see Illinois v. Gates*, 462 U.S. 213, 233 (1983).

Moreover, the court must base its assessment on objective facts and not an officer's subjective

intent.  *Zellner*, 494 F.3d at 369.

Section 53a-167a provides that "[a] person is guilty of interfering with an officer when

such person obstructs, resists, hinders or endangers" a police officer "in the performance of [the]

officer's . . . duties."  Conn. Gen. Stat. § 53a-167a(a).  Section 53a-167a "necessarily was drafted

expansively to encompass a wide range of conduct that may be deemed to impede or hinder a

police officer in the discharge of his or her official duties."  *State v. Aloi*, 280 Conn. 824, 837

(2007).  "To 'hinder' is defined as 'to make slow or difficult the course or progress of.'"  *Id.*

Accordingly, the statute may be violated when an individual refuses to comply with a lawful

direct order, and it is "that refusal that hinders or impedes" the performance of an officer's

duties. *Acevedo v. Sklarz*, 553 F. Supp. 2d 164, 168 (D. Conn. 2008); *see also Lawson v.*

*Hilderbrand*, 88 F. Supp. 3d 84, 99 (D. Conn. 2015), *rev'd and remanded on other grounds*, 642

F. App'x 34 (2d Cir. 2016).[1]

To avoid constitutional infirmity, the Connecticut Supreme Court has construed section

53a-167a only to prohibit "physical conduct and fighting words that by their very utterance

inflict injury or tend to incite an immediate breach of the peace." *State v. Williams*, 205 Conn.

456, 473 (1987). Mere verbal conduct, such as "question[ing] a police officer's authority or

protest[ing] [the officer's] action," is not prohibited under the statute. *Id.* at 472; *see also*

*Acevedo*, 553 F. Supp. 2d at 168. Moreover, an individual may not be prosecuted under the

statute for the refusal to obey an *unlawful* order. *Lawson*, 88 F. Supp. 3d at 100.

The defendants in this case argue that Vanek had probable cause to arrest Marsh because

she refused to comply with Vanek's multiple requests to vacate the premises. That Marsh

refused to comply with Vanek's direct request is not disputed. Def.'s Local Rule 56(a)1 Stmt.

("DLR") at ¶ 22 ("Plaintiff has admitted that Sergeant Vanek instructed her to 'get out of here'

more than once . . . ."). Thus, the only matters in dispute are whether Marsh was justified in

refusing the officer's request, *i.e.*, whether the order was lawful, and whether Marsh's refusal

actually "obstruct[ed], resist[ed], hinder[ed] or endanger[ed]" an officer in the performance of

his duties.

---

[1] Marsh points out that, in order to be liable for interfering with an officer, one must have the requisite intent to interfere. Intent is not an issue in this case because Marsh was arrested for refusing a direct command. As the Second Circuit has recognized, an officer may infer intent to interfere by an individual's refusal to comply with his request. *See Zalaski v. City of Hartford*, 723 F.3d 382, 394 (2d Cir. 2013). Such an inference is sufficient to support probable cause for arrest. *Id.*

An officer arriving at the scene of an emergency situation has the authority to "seal off" the area. *See Herpel v. Joyce*, 1992 WL 336765, at *5 (D. Conn. Sept. 30, 1992). Accordingly, "a person could interfere with the performance of an officer's duties merely by refusing to leave an area that the officer was attempting to seal off." *Herpel*, 1992 WL 336765, at *5; *see also State v. Peruta*, 24 Conn. App. 598, 607 (1991); *Brooks v. Siegler*, 531 F. Supp. 2d 323, 330 (D. Conn. 2008). That said, an officer's authority to command a bystander into action is limited to circumstances in which the bystander is actually present at—or attempting to gain access to—the area the officer was attempting to seal off. *See Brooks*, 531 F. Supp. 2d at 330; *Ruttkamp v. De Los Reyes*, 2012 WL 3596064, at *8 n.18 (D. Conn. Aug. 20, 2012) (plaintiff did not interfere with officer's duties when positioned in a location "where she had every right to be.").

Even if the defendant can show that the plaintiff refused a lawful order, the defendant must also establish that the plaintiff's refusal actually interfered with the officer's duties. *Torlai*, 2015 WL 9047785, at *8. The failure to leave a sealed off area will be considered interference upon a showing that the refusal "create[d] a distraction that draws the officer's attention away from his other duties at the scene." *Herpel*, 1992 WL 336765, at *5.

The undisputed facts are as follows: Vanek arrived at the scene of a vehicular accident. DLR at ¶ 11. When he arrived, he made efforts to secure the scene in order to allow emergency responders to perform life-saving services. *Id.* at ¶ 12. In order to secure the scene, Vanek believed it to be essential to keep all civilians from the immediate vicinity of the accident. *Id.* at ¶ 13. At some point thereafter, Marsh, who had been standing off to the side with other onlookers, approached the accident scene in order to take a photo. *Id.* at ¶¶ 14–15. Marsh positioned herself between two fire trucks, standing immediately behind them. *Id.* at ¶ 16. Her position enabled her to better view the accident scene. *Id.* She was the only civilian standing in

that location. *Id.* at ¶ 17.  When Vanek came across Marsh attempting to take photos of the accident, Vanek instructed her, more than once, to vacate the premises. *Id.* at ¶ 22.  Marsh refused to do so and attempted to explain to Vanek who she was and what she was doing. *Id.* During the course of those events, Vanek observed that a Town firefighter, Robert Bidwell, was distracted from his duties of "flaking out the [fire]hose and continually montoring radio communications for a request to deploy water or foam." *Id.* at ¶ 24.  Moreover, Vanek testified that his interaction with Marsh prevented him from otherwise "maintaining a safe accident scene and supervising other police officers on scene." *Id.* at ¶ 26.  As a result of the encounter, Vanek placed Marsh under arrest for interfering with the police, in violation of section 53a-167a. *Id.* at ¶ 29.

Marsh argues that Vanek did not have the authority to order her to leave her position behind the fire trucks because there was no longer a need to secure the area.  Marsh points out that, at the time she attempted to photograph the accident, the accident victim had already been taken out of the vehicle and placed into the ambulance.  Pl.'s Local Rule 56(a)2 Stmt. of Disputed Issues of Material Fact at ¶ 10.  Moreover, Marsh asserts that there were neither officers nor other emergency personnel in her immediate vicinity and thus there was no one for her to interfere with. *Id.* at ¶ 16.  Finally, Marsh points to Vanek's hostility towards Marsh's attempt to take pictures in order to cast doubt on whether Vanek truly believed Marsh to be interfering with his official duties.

As a preliminary matter, Vanek's verbal conduct or subjective intent is not relevant to the objective inquiry of whether there was probable cause to arrest Marsh. *See Zellner*, 494 F.3d at 369.  The fact that Vanek's statements indicate that he might have had other motivations for arresting Marsh is not relevant to the probable cause determination. *Id.*

Whether Marsh was lawfully present in the location in between and behind the fire trucks is a more complicated question. The parties do not cite to any case, nor have I found one, that clearly delineates the extent to which an officer has the authority to "seal off" a particular area. The cases in this state and within this District that have addressed the issue all seem to presume a certain inherent authority to seal off areas in the vicinity of an emergency situation. *See Coffey v. Callaway*, 86 F. Supp. 3d 111, 121 (D. Conn. 2015) (ordering people to clear the street and return to their homes following breakup of house party was "clearly a permissible exercise of the police power"); *Herpel*, 1992 WL 336765, at *5 (recognizing police officers' "community caretaking functions," which include sealing off the scene of an accident); *State v. Peruta*, 24 Conn. App. 598, 607 (1991) (implicitly recognizing that police officer had right to order photographer to move from the immediate vicinity of a car accident). The only circumstances in which the court held that an officer lacked probable cause to arrest an individual for interference involved situations in which the individual's interference is either purely verbal, *see Goff v. Chivers*, 2017 WL 2174404, at *10 (D. Conn. May 17, 2017), or in which the individual is unequivocally located in an area that she may lawfully occupy. *See Brooks*, 531 F. Supp. 2d at 330 (plaintiff lawfully standing on her property and officer had no legitimate reason to request plaintiff to leave that location); *but see Coffey*, 86 F. Supp. 3d at 121 (officer had probable cause to arrest individual notwithstanding fact that individual was on own property, because individual's presence obstructed officer's attempts to disperse crowd). From those cases, it is clear that courts afford a fair amount of deference to an officer's decision to seal off certain areas in order to perform official functions.

Based on the deference that courts give to law enforcement's authority to secure an accident scene, Marsh cannot raise a genuine issue of material fact with respect to whether

Vanek had the authority to order Marsh to move away from the scene. After all, Vanek, a Sergeant with the East Hartford Police Department, testified that he was actively attempting to secure an accident scene. Marsh does not dispute that she was alone in an area, in between and immediately behind fire trucks that were not only *near* an emergency scene, but were part of that scene. Although she argues that the emergency had dissipated by the time she went in to take a picture, Marsh offers no authority indicating that her personal assessment of the emergency situation is entitled to any weight. After all, it is law enforcement's duty to secure the scene of an accident and determine when it is safe for civilians to enter an otherwise secured area. *See Herpel*, 1992 WL 336765, at *5.

The facts of this case are not similar to out-of-circuit cases that have recognized an individual's right to observe and/or record police activity. *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005) ("At all times he was 20 to 30 feet from the officers and was not interfering in any way with their truck inspections."); *Connell v. Town of Hudson*, 733 F. Supp. 465, 470 (D.N.H. 1990) ("Although he may have crossed a police perimeter, that perimeter was not clearly delineated, and, when asked to move, he moved."); *Channel 10, Inc. v. Gunnarson*, 337 F. Supp. 634, 638 (D. Minn. 1972) (individual had right to remain in particular location because "[t]here was no restriction of the general public from the area"). Each of those cases involved situations in which the individual was unequivocally not interfering with law enforcement or, if interfering, immediately complied with an officer's request to avoid further interference. The Court in *Connell* highlighted the importance of compliance by pointing out that, when the plaintiff was told he was interfering with the police perimeter, he quickly complied with the officer's request to relocate. *Connell*, 733 F. Supp. at 470. Such a situation is

in direct contrast with the facts of the instant case, in which Marsh refused to move after being told she was in an improper location.

Because Vanek had the authority to order Marsh to leave the immediate vicinity of the emergency vehicles that had responded to an emergency, I must next determine whether Marsh's refusal constituted interference of Vanek's official duties. Firefighter Bidwell testified that he was distracted by Marsh's presence and her refusal to accede to Vanek's requests. DLR at ¶ 25. Marsh cannot raise a dispute of material fact with respect to that issue by merely stating in her Local Rule Response that she "has no knowledge as to what Bidwell saw or did," Pl.'s Local Rule 56(a)2 Response at ¶ 25. *See Buell v. Hughes*, 568 F. Supp. 2d 235, 237–38 (D. Conn. 2008) (lack of knowledge insufficient to create a dispute of material fact). Moreover, in her opposition brief, Marsh admitted that Bidwell was at least momentarily distracted. Pl.'s Opp'n at 6. Because there is no quantum of interference required under the statute, Marsh's judicial admission alone is sufficient to establish that Marsh's conduct hindered the performance of the duties of emergency personnel. Even if Marsh could dispute the fact that her actions distracted Bidwell, it remains undisputed that Marsh's refusal to leave prevented Vanek from the performance of his own duties. Vanek testified that his job was to secure the scene and supervise other officers. By being forced to spend time arguing with Marsh over her ability to remain at her location, Vanek was impeded in his ability to perform his duties. Accordingly, that Vanek had probable cause to arrest March for interfering with such duties is not a genuine issue of material fact.

At oral argument, Marsh kept pressing her position that she had no intent to interfere, she was not in fact interfering, and that there was no longer an ongoing emergency. Those arguments all fail when one takes a close look at the undisputed facts. Marsh's claim that she

lacked the intent to interfere, or that she was not in fact interfering, is contradicted by her

admission that she refused to follow the direct orders of an officer.  Marsh's claim that the

officer had no right to ask her to leave because the emergency had dissipated is unsupported by

law and the facts of this case.  As already discussed, officers have an inherent right to secure the

scene of accidents and ensure that civilians do not come too close to emergency vehicles

responding to an emergency.  Moreover, besides her self-serving opinion evidence, there is

nothing to indicate that the emergency had dissipated.  Whether or not the car accident victim

was or was not already in the ambulance does not determine whether an emergency situation still

existed.  Based on the undisputed testimony of Vanek and Bidwell, it was apparent that officers

were still on the scene of an accident and were performing their official duties.  Accordingly,

there was probable cause to arrest Marsh for interfering with such duties.

     1.   *False Arrest/Malicious Prosecution (Counts Two and Three)*

The existence of probable cause to arrest operates as a complete defense to section 1983

claims based on false arrest and/or malicious prosecution.  *See Gonzalez v. City of Schenectady*,

728 F.3d 149, 155 (2d Cir. 2013) (false arrest); *Torlai v. LaChance*, 2015 WL 9047785, at \*5 (D.

Conn. Dec. 15, 2015) (malicious prosecution).  Because I have concluded that there was

probable cause to arrest Marsh, summary judgment is granted on her false arrest and malicious

prosecution claims.

     2.   *Retaliatory Arrest/First Amendment Retaliation (Count Four)*

Vanek argues that Marsh's First Amendment retaliation claim must fail because her arrest

was supported by probable cause.  The Supreme Court has affirmed that the existence of

probable cause is a complete defense to a claim of retaliatory prosecution, but has not addressed

whether the same is true with respect to retaliatory arrests.  *See Hartman v. Moore*, 547 U.S. 250,

262 (2006); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2096 (2012).  Some courts have distinguished between retaliatory arrest claims and retaliatory prosecution claims, and have held that the existence of probable cause is not necessarily a *per se* bar to a retaliatory arrest claim. *See Valencia v. De Luca*, 2014 WL 11430951, at *19 (D.N.M. Aug. 26, 2014), *aff'd*, 612 F. App'x 512 (10th Cir. 2015) ("Defendants interpret the holding in *Reichle* too broadly when they argue that . . . [the existence of] probable cause  trumps a retaliatory arrest claim."), *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 561 (D.S.C. 2013) (allowing plaintiff to proceed with First Amendment retaliation claim despite the fact that the arresting officer had probable cause to arrest him).  The Second Circuit is not one of those courts, and has instead held that there is no right to be free from a retaliatory arrest that is otherwise supported by probable cause.  *See Abeyta v. City of N.Y.*, 588 F. App'x 24, 25 (2d Cir. 2014); *Fabrikant v. French*, 691 F.3d 193, 218 (2d Cir. 2012).  That holding is in accordance with its long line of precedent that a retaliatory arrest claim may only proceed if the plaintiff can also establish a false arrest claim. *See Blue v. Koren*, 72 F.3d 1075, 1083 n.5 (2d Cir. 1995); *see also Coffey v. Callaway*, 86 F. Supp. 3d 111, 123–24 (D. Conn. 2015).  Because the absence of probable cause remains an essential element of a First Amendment retaliation claim, at least within this Circuit, summary judgment is granted on Marsh's retaliatory arrest claim.

    3.  Monell *Claim (Count Five)*

Marsh has asserted that the Town should be held liable for the conduct of Vanek because it failed to adequately train him to avoid violating Marsh's constitutional rights.  Under section 1983, a municipality is not vicariously liable for the torts of its employees or agents.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see also, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).  As a precondition to liability

13

under section 1983, "the governmental body itself [must] 'subject[]' a person to a deprivation of rights or 'cause[]' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Therefore, in order for municipal or official capacity liability to be imposed, there must be "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003) (plaintiff must show municipality is actually responsible for her injury).

As a principal matter, the defendants are entitled to summary judgment on Marsh's *Monell* claim because it relates to an alleged constitutional deprivation that did not occur. Marsh's *Monell* claim is based on an allegation that Vanek lacked proper training to interact with someone who was filming an accident scene without violating their First Amendment rights to film police activity. Because I have concluded that there has been no violation of Marsh's First Amendment right to film police activity, Marsh's *Monell* claim lacks any substantive constitutional violation on which to rest.[2]

Even if there was an underlying constitutional deprivation that occurred, Marsh's *Monell* claim fails because it fails to show that such deprivation was the result of the defendants' "deliberate indifference" to Marsh's constitutional rights. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Marsh attempts to argue that Vanek was inadequately trained but does not provide any evidence that there was a "specific deficiency in the city's training program," let alone that the "deficiency is closely related to [her] injury, such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129

---

[2] Although Marsh's excessive force claim remains in the case, Marsh does not allege that the defendants are liable for the failure to train Vanek on the use of force. Accordingly, the *Monell* claim cannot be based on that alleged constitutional deprivation.

(2d Cir. 2004)) (internal quotation marks omitted).  The failure to offer evidence regarding the Town's training program will make it impossible for the plaintiff to identify a specific deficiency in that program, let alone that the deficiency actually caused the alleged constitutional violation. *See Crawford v. City of New London*, 2014 WL 202369, at *14 (D. Conn. Jan. 16, 2014). Moreover, Marsh's failure to identify a single other occurrence in which a Town officer allegedly violated an individual's constitutional rights under similar circumstances makes Marsh unable to show that a Town policymaker was on notice that the failure to train would result in a constitutional violation.  Accordingly, summary judgment is granted on Marsh's *Monell* claim.

### 4.  *Gross Negligence/Recklessness (Counts Eight and Nine)*

Marsh asserts that Vanek acted recklessly and with gross negligence in the course of interacting with her.  Specifically, Marsh argues that Vanek acted with recklessness and/or gross negligence in the following ways:

> a. By failing and/or refusing to determine whether plaintiff posed an actual interference at the accident scene before assaulting her;

> b. By failing and/or refusing to determine whether plaintiff was interfering in any way with the accident scene when she attempted to take photos of the car before grabbing plaintiff's cell phone, breaking in it half and throwing it on the ground[; and]

> c. By failing or refusing to properly investigate the situation before using excessive force against plaintiff.

Am. Compl. at ¶ 58.  Each of these allegations relate to Vanek's conduct prior to his decision to arrest Marsh.  To the extent that those allegations attempt to undermine the legitimacy of, or claim damages from, Marsh's arrest itself, those claims fail.  *See Brooks*, 299 Conn. at 222 (officer not liable for negligence when the complained-of conduct is an arrest supported by probable cause).

If not related to what I would refer to as Marsh's "negligent arrest" claim, the allegations of negligence and recklessness must relate to Marsh's claim that Vanek destroyed her phone and subjected her to the use of excessive force during the arrest. Whether her arrest was supported by probable cause does not affect those claims because, regardless of the propriety of the arrest itself, it was Vanek's duty to arrest her in a reasonable manner. *See Bussolari v. City of Hartford*, 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016). Unlike New York law, which prohibits a plaintiff from bringing a negligence claim against a police officer based on his manner of arrest, *see Mazurkiewicz v. New York City Transit Auth.*, 810 F. Supp. 563, 571 (S.D.N.Y. 1993), Connecticut law permits negligence claims against police officers alleged to have used excessive force. *See Bussolari*, 2016 WL 4272419, at *3 (collecting cases). If a jury were to conclude Marsh was injured as a result of Vanek's negligent conduct during the course of the arrest, Marsh will be able to prevail on a negligence claim. The same is true for Marsh's recklessness claim.

In response to those claims, Vanek asserts that he is protected by governmental immunity. Generally speaking, "a municipal employee is liable for the misperformance of ministerial acts, but has qualified immunity in the performance of governmental acts." *Spears v. Garcia*, 263 Conn. 22, 36 (2003). However, Connecticut has long recognized "the identifiable person-imminent harm exception' to discretionary-act immunity." *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 367 (D. Conn. 2008) (collecting cases). In order to fall within the identifiable person-imminent harm exception, the plaintiff must establish that there is: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Doe v. Petersen*, 279 Conn. 607, 616 (2006)). That exception has been applied "in the context of excessive force claims based on

affirmative acts where the harm to the individual is so foreseeable as to create . . . a duty of care." *Bussolari*, 2016 WL 4272419, at *4 (internal quotation marks omitted).

In the instant case, viewing the facts in the light most favorable to the plaintiff, there is sufficient evidence for a jury to conclude that Marsh was an identifiable victim who was subject to possibility of imminent harm during the course of the arrest. Vanek, as the arresting officer, was aware that his conduct was likely to subject March to that harm. Because the allegations fall within the identifiable person-imminent harm exception, Vanek may not avail himself of the governmental immunity defense with respect to his alleged negligent and/or reckless conduct. As a result, although summary judgment is granted with respect to Marsh's negligence and recklessness claims relating to Vanek's decision to arrest her, it is denied with respect to Marsh's negligence and recklessness claims relating to the manner in which she was placed under arrest and into the vehicle.

B.  Remaining Claims Subject to Summary Judgment

The following claims are not resolved by my conclusion that Marsh's arrest was supported by probable cause.

1.  *Intentional Infliction of Emotional Distress (Count 10)*

An intentional infliction of emotional distress claim requires the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000) (internal quotation marks omitted).

Marsh alleges that Vanek's course of conduct throughout their encounter caused her emotional distress. Because I have determined that Vanek had probable cause to arrest her, Marsh cannot base her claim on the fact of her arrest. *See Brooks v. Sweeney*, 299 Conn. 196, 210 (2010) (recognizing, but not deciding, that existence of probable cause defeats claim that plaintiff suffered emotional distress as a result of arrest or prosecution).[3] Rather, Marsh's IIED claim must rest on the allegations that Vanek's alleged use of excessive force against her caused her severe or extreme emotional harm.

"The question whether a defendant's conduct can be characterized as 'extreme or outrageous' has been held to be for determination by the court in the first instance." *McKelvie v. Cooper*, 190 F.3d 58, 63 n.7 (2d Cir. 1999) (citing *Kintner v. Nidec–Torin Corp.*, 662 F. Supp. 112, 114 (D. Conn. 1987)). In order for conduct to be deemed "extreme or outrageous," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Id.* (quoting Restatement (Second), Torts § 46, cmt. (d), p. 73 (1965)).

Some courts have observed that the "use of excessive force in effecting an arrest can state a claim for intentional infliction of emotional distress." *See Brown v. Catania*, 2007 WL 879081, at *10 (D. Conn. Mar. 21, 2007) (collecting cases). That does not mean, however, that every instance of excessive force necessarily constitutes extreme or outrageous conduct. *See id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) ("It has not been enough that the

---

[3] Accordingly, Marsh may not rely on a line of authority indicating that an officer may be liable for IIED on account of an abuse of authority in connection with an unlawful arrest. *See, e.g.*, *DeRafelo v. Littlejohn*, 2012 WL 2459396, at *6 (D. Conn. June 27, 2012).

defendant has acted with an intent which is tortious or even criminal . . . ."); *see also Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1559 (10th Cir. 1995) (construing similar provision under Oklahoma law and rejecting notion that "every assault or battery is necessarily an intentional infliction of emotional distress"). In the cases that have held that an IIED claim is substantiated by evidence that the defendant officer used excessive force, the alleged conduct was sufficiently extreme or outrageous to satisfy the state law standard. *See McKelvie*, 190 F.3d at 60 (officer threatened to "blow [plaintiff's] head off" and struck him in back of head with gun while holding plaintiff in manner causing "excruciating pain" to his shoulder"); *Zadrowski v. Town of Plainville*, 2013 WL 5435491, at *2 (D. Conn. Sept. 30, 2013) (officer "ran up behind [plaintiff], slammed her against her car, choked her to the point where she couldn't breathe"); *Marceline v. Delgado*, 2011 WL 2531081, at *11 (D. Conn. June 23, 2011) (defendant tried to "force [plaintiffs] off the highway and detain[ed] them at gunpoint without justification"); *Brown*, 2007 WL 879081, at *1 ("Officer Dambra jumped on Plaintiff's back, wrapped her legs around his waist and choked him, causing him to become semi-conscious."); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) (officer "hit [plaintiff] repeatedly with a flashlight").

The instant case does not resemble the cases in which an officer's use of force was deemed sufficiently extreme or outrageous to support an IIED claim. In her affidavit, Marsh states that she was abruptly pushed and yelled at by Vanek when she was attempting to photograph the scene. Marsh Aff. at ¶ 9. Then Vanek pushed Marsh toward his police vehicle and handcuffed her. *Id.* at ¶ 12. As Vanek was placing Marsh into the car, Marsh "fell and hit [her] head on the car"—hard enough to cause her to blackout and cause ringing in her ears. *Id.* Her head began to ache with a "terrible pain" as Vanek continued to yell at her. *Id.* Although there may be issues of fact with respect to whether the force used to effect the arrest of Marsh

was greater than necessary under the circumstances, there is not a genuine issue of material fact with respect to whether Vanek's conduct was sufficiently extreme or outrageous to support an IIED claim.  Taking Marsh's statements as true, they at most indicate that Vanek placed Marsh into the car roughly, causing her to strike her head as she entered it.  That conduct, coupled with Vanek's lawful yet potentially aggressive arrest, is insufficiently extreme or outrageous to support an IIED claim.

Even if Vanek's conduct could be viewed as sufficiently extreme or outrageous, Marsh's IIED claim fails because she has not established that she suffered severe emotional distress as a result of that conduct.  An IIED claim must be supported by evidence that the defendant's conduct caused "mental distress of a very serious kind."  *Birdsall*, 249 F. Supp. 2d at 175 (quoting *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267 (1991)) (internal quotation marks omitted).  Emotional distress is sufficiently severe "when it reaches a level which 'no reasonable person could be expected to endure.'"  *Id.* at 176 (quoting *Mellaly v. Eastman Kodak*, 42 Conn. Super. Ct. 17 (1991)).  Symptoms such as "memory loss and anxiety" have been deemed "sufficiently serious that a reasonable jury could find for the plaintiff on [an IIED] claim."  *Id.*  That said, in order to be actionable, such symptoms must be directly tied to the defendant's unlawful conduct and not merely a byproduct of being involved in stress-inducing incident.  *See Almonte v. Coca-Cola Bottling Co. of N.Y.*, 959 F. Supp. 569, 575–76 (D. Conn. 1997) (holding that symptoms common to many employees who have been fired are insufficient to establish IIED claim when plaintiff fails to show that plaintiff suffered those symptoms to an "extraordinary degree").  Although medical records are not required to show proof of emotional distress, the plaintiff may not rely on mere conclusory statements regarding her alleged distress.  *Zadrowski*, 2013 WL 5435491, at *12.

Marsh does not support her claim of emotional distress with anything except self-serving statements in her affidavit. Even taking those statements as true, there is not sufficient evidence for a reasonable jury to conclude that Marsh suffered emotional distress severe enough to support an IIED claim. Marsh's affidavit states that, after being released from the hospital, she continued to experience dizziness and bad headaches for a limited period of time. Marsh Aff. at ¶ 17, 20. She also states that she was diagnosed with a concussion, which is consistent with her allegations of dizziness and headaches. *Id.* From what she describes, the only possible conclusion is that her headaches and dizziness were caused by the fact that she hit her head as she was being placed into the police car. Any injuries resulting from her hitting her head on the police car are physical in nature and cannot be said to have been caused by emotional distress. At no point in the record does Marsh intimate that her headaches and dizziness were caused by emotional distress as opposed to physical injury. The only portion of her affidavit that even attempts to show proof of emotional harm is her conclusory statement that the entire incident caused her "great mental, emotional and physical anguish." *Id.* at ¶ 24. That is insufficient to survive summary judgment on her IIED claim. *See Zadrowski*, 2013 WL 5435491, at *12 (noting that conclusory statements are insufficient, but recognizing that plaintiff could support IIED claim through testimony that headaches and anxiety were lingering emotional effects of her traumatic experience). Accordingly, summary judgment is granted in favor of Vanek on Marsh's IIED claim.

2. *Indemnification (Count Eleven)*

The defendants moved for summary judgment on Marsh's indemnification claim, seeking an order that the plaintiff may only seek damages arising from the negligence claims alleged against Vanek. I determined that this issue was premature and that the parties may litigate the applicability of indemnification should there be a jury award in favor of Marsh.

**IV.    Conclusion**

For the foregoing reasons, the motion for summary judgment (doc. # 28) is granted in part, and denied in part.  The case will proceed to trial against Vanek on Counts One (excessive force), Six (assault), and Seven (battery).  The case will also proceed to trial against Vanek on Counts Eight (Gross Negligence) and Nine (Recklessness), insofar as those claims concern the manner in which Marsh was placed under arrest and into the vehicle.  All other claims and defendants are dismissed.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of July 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge